### Felix Gros *v.* Rosalie Luperle Bienvenu.

Concealment by the vendor of any vice or defect in a slave, is no fraud, unless such vice or defect would furnish ground for redhibition.

Appeal from the District Court of the First District, *Buchanan*, J.

*Train,* for the plaintiff.

*Beauregard,* for the appellant.

Morphy, J. The defendant enjoined executory proceedings instituted to recover of her a balance due on the price of a slave named Maria, and her two children, François aged six years, and Joseph about two years, sold to her by the petitioner. She alleges that the latter, in the act of sale, warranted said slaves to be free from the vices and maladies provided against by law, but that in so doing he practiced upon her a gross fraud, as the slave Maria was addicted to drinking, had run away from him

prior to the sale, and had been lodged in jail as a runaway, from which place the plaintiff took her, and paid a reward for her apprehension; and as Joseph, one of her children, was, at the time of sale, attacked with an incurable disease, of which he died shortly after. She avers that the plaintiff represented the sickness of the child as having been caused by the measles, and as a slight affection that would shortly pass away, but that such representations were untrue and made only to entrap her, &c. On a rule to show cause why the injunction should not be set aside, the inferior judge, after hearing the evidence, made the injunction perpetual to the amount of fifty dollars, as being the value of the child, Joseph, and dissolved it for the residue of the claim. The defendant appealed, after ineffectually attempting to obtain a new trial.

The evidence adduced has not shown Maria to be addicted to drinking, nor to have been in the habit of running away, as that habit is defined by article 2505 of the Civil Code. It appears, however, that while she was in the possession of the plaintiff, who employed her at times in selling milk and ice cream in the evening, she did not, one night, return to her master's house, and that, at his request, she was arrested by the city guard a. day or two after, and lodged in the jail of the Third Municipality, out of which she was taken by the plaintiff, who paid for her apprehension. It is not pretended that before or since this time, she ever left the service of her former or present master; and a number of witnesses, some of whom have owned the girl, testify that she has always borne an excellent character. The appellant's counsel has contended that there was fraud, on the part of plaintiff, in not apprising her of what Maria had done, and in stating to the broker, through whom the bargain was made, that she was a good girl, and had never run away. As Maria had committed but this single transgression, which, under the circumstances, and considering her general good behavior, the plaintiff did not perhaps regard as an actual running away, he might well have believed himself under no obligation to communicate it to the purchaser; nor do we think that he was bound to do it. In the case of *Xenes* v. *Taquino et. al.*, 7 Mart. N. S. 678, we said that, " unless the vice or defect of a slave was one which furnished a ground for redhibi-

tion, there was no fraud in concealing it." The case relied on, of *Gaillard* v. *Labat et al.*, (9 La. 18,) is widely different from the present. In that the slave was *addicted to drunkenness*, unworthy to be trusted, and unfit to be used as a house servant, and she was sold as a *confidential* and *first rate house servant*, trusty, sober, and honest. The court was of opinion that the false assertion of qualities which the slave did not possess, and the concealment of her vices and defects, constituted such a fraud, under article 1841 of the Civil Code, as should vitiate the contract. In the present case, the sale contains the usual guarantee against the vices and maladies provided against by law. Under such a clause, the purchaser cannot complain that the vendor did not disclose a fact which furnishes no ground for redhibition, and which does not necessarily detract from the value or usefulness of the slave sold. The concealment of it has occasioned no loss or inconvenience to the defendant, nor has it procured to the plaintiff any unjust advantage, as the price given for the three slaves, to wit, $1250, cannot be considered in any way extraordinary. After the note sued on was protested, the defendant endeavored to make an arrangement with the plaintiff, and offered him an additional mortgage on a lot of ground. Up to that time, which was more than six months after the sale, she appeared satisfied with Maria ; and complaints about her were heard only after the proposed arrangement had failed, and the present suit was about to be brought.

As relates to the child, Joseph, who died shortly after the sale, Formento, a physician, says that he was called to see him at the defendant's house, in September, 1841, the very month in which the sale took place. That he found the boy in a state of marasmus. That he was so low that he could not tell what was the cause of his disease, but that the child must have been sick at least two or three months before he saw him, &c. From this portion of the testimony, coupled with that of the broker, it is clear that, at the time of the sale, the child was sick of the disease of which he died ·shortly after. We cannot say that the judge erred, in fixing fifty dollars as a fair allowance for the child, Joseph, out of the $1250 given for the family. As he was then sick to defendant's knowledge, and was very young, the value set upon. him must have been very small, in proportion to that set

upon the mother, who was a good washer-woman, and the brother who was six years of age, both of whom were conveyed by the same bill of sale.

*Judgment affirmed.*